UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEN UMEZE, MD,

           Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF HEALTH, DR. JAMES V. MACDONALD, COMMISSIONER OF NEW YORK STATE DEPARTMENT OF HEALTH, AMIR BASSIRI, NEW YORK STATE MEDICAID DIRECTOR, THE NEW YORK STATE OFFICE OF MEDICAID MANAGEMENT, and THE STATE OF NEW YORK,

           Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/24/2025

1:24-cv-7425 (MKV)

OPINION AND ORDER
DENYING
PRELIMINARY INJUNCTION

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff is a doctor who has long provided care to recipients of Medicaid through a contract with Healthfirst, which has elected not to renew the contract. Plaintiff, who is proceeding *pro se*, seeks extraordinary relief preventing the termination of his relationship with Healthfirst, among other relief, pending the resolution of this action [ECF No. 25]. The Court issued a Temporary Restraining Order to maintain the status quo until it had an opportunity to hold a hearing [ECF No. 27]. After holding a hearing with all parties present, the Court vacated the Temporary Restraining Order [ECF No. 47]. The Court now makes the following findings of fact and conclusions of law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure. In light of those findings and conclusions, the motion for a preliminary injunction is DENIED.

## I. PROCEDURAL HISTORY

    Plaintiff, proceeding *pro se*, initiated this case on October 1, 2024 by filing a complaint against the New York State Department of Health, Dr. James V. Macdonald, Commissioner of

New York State Department of Health, Amir Bassiri, New York State Medicaid Director, The New York State Office of Medicaid Management, and The State Of New York (collectively, the "State") [ECF No. 1 ("Cmpl." or the "Original Complaint")]. In the Original Complaint, Plaintiff alleged that he is a doctor who has long provided care to recipients of Medicaid through a contract with "Health First [sic], a New York State licensed Medicaid Managed Care Organization." Cmpl. ¶ 5; *see id.* ¶ 11. He further alleged that Healthfirst failed to make certain payments and, later, sent him a notice of non-renewal without resolving the issue of the outstanding payments. Cmpl. ¶¶ 14, 16. Plaintiff did not name Healthfirst as a defendant.

Rather, in the Original Complaint, Plaintiff claimed that the State was a proper defendant because, he alleged, "it holds the responsibility for ensuring that Medicaid providers, like the Plaintiff, receive appropriate payments for services rendered . . . ." Cmpl. ¶ 7. He asserted a claim for breach of contract and a claim, pursuant to 42 U.S.C. § 1983, for violation of his Fourteenth Amendment right not to be deprived of property without due process of law. *See* Cmpl. ¶¶ 17–20. He also asserted a Section 1983 claim based on the Equal Protection Clause. *See* Cmpl. ¶¶ 21, 22. Finally Plaintiff asserted a claim he styled, "Failure to Increase Capitation Rates in Violation of Medicaid Policies." Cmpl. ¶¶ 24, 25.

On December 3, 2024, Plaintiff filed his first motion for emergency relief [ECF No. 14 ("First Mot.")]. He requested an order directing "**HealthFirst, Inc.** to stay the termination" of Plaintiff's contract and "to immediately retract [allegedly] misleading patient notification letters" stating that Plaintiff would no longer be in the Healthfirst network. First Mot. at 2 (emphasis in original). Plaintiff further requested an order directing the State "to require HealthFirst to halt implementation of the termination." *Id.* Shortly thereafter, the State filed a letter seeking leave to file a motion to dismiss Plaintiff's Original Complaint [ECF No. 15].

On December 16, 2024, the Court held a conference with Plaintiff and the State. The Court explained on the record at the conference and in a subsequent Order that, liberally construing his submissions, Plaintiff had not made the showing required to obtain emergency relief at that stage of these proceedings [ECF No. 21 ("Order Denying Emergency Relief")]. In particular, in his first motion for emergency relief, Plaintiff had sought an order against Healthfirst, but he had not named Healthfirst as a party, and the Court "[could] not issue an order against a nonparty." Order Denying Emergency Relief at 3 (quoting *United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992)). The Court further explained that the evidence in the record at that stage contradicted Plaintiff's contention that the State was a party to his contract with Healthfirst and had the authority to direct Healthfirst to continue contracting with him. *See id.* at 4.

The Court gave Plaintiff leave to amend and file a renewed motion for emergency relief. *See id.* at 5. Plaintiff filed an amended complaint which names as additional defendants Healthfirst PHSP Inc., Healthfirst, and Pat Wang (collectively, "Healthfirst") [ECF Nos. 20 and 34-1 ("AC" or the "Amended Complaint")].[1] The factual allegations and the claims asserted in the Amended Complaint are identical to allegations and claims in the Original Complaint. *Compare* Cmpl. ¶¶ 11–25, *with* AC ¶¶ 14–28. Plaintiff also filed a renewed motion for emergency relief [ECF No. 25 ("Renewed Mot.")]. That motion requests "an emergency order" directing (1) Healthfirst "to stay the termination of Plaintiff's" contract pending the resolution of this case, (2) the State "to require HealthFirst to halt implementation of the termination," and (3) Healthfirst to "retract the [allegedly] misleading patient notification letters" advising patients that Plaintiff would cease to be a provider in the Healthfirst network on January 1, 2025. Renewed Mot. at 2.

---

[1] The handwritten Amended Complaint filed on ECF at docket entry 20 omits the substance of Plaintiff's allegations and claims. A typed document captioned "Amended Complaint" was served on Healthfirst and submitted to the Court by Healthfirst at docket entry 34-1.

On December 27, 2024, the Court issued a Temporary Restraining Order "to preserve [the] existing situation *in statu quo* until the court ha[d] an opportunity to pass upon the merits of the demand for a preliminary injunction" [ECF No. 27 ("TRO") at 1 (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009))]. As such, the Court directed Healthfirst to "temporarily stay the termination of Plaintiff's participation in its provider network." TRO at 2. The Court did not direct the State to take any action, nor did the Court direct Healthfirst to "retract . . . patient notification letters." Renewed Mot. at 2. The Court scheduled a hearing on Plaintiff's motion and directed him to serve his motion and the Court's order on Defendants. TRO at 2.

On January 3, 2025, Healthfirst filed a memorandum of law in opposition to Plaintiff's motion for a preliminary injunction and supporting exhibits [ECF Nos. 33 ("Healthfirst Opp."), 34, 35 ("Pike Decl."), 35-1 ("2017 Contract"), 35-2 ("2014 Contract"), 36 ("McLaughlin-Mitchell Decl.")]. Healthfirst stresses that its contract with Plaintiff "was not 'terminated'"; rather, Healthfirst "elected to allow it to expire by its own terms, rather than renewing it." Healthfirst Opp. at 1. Healthfirst cites a provision of its contract with Plaintiff which states that "either party may exercise a right of non-renewal at the [yearly January 1st] expiration date" on at least "sixty (60) days' notice to the other party." 2017 Contract § 8.1; *see also* 2014 Contract § 8.1. Healthfirst further submits that, contrary to Plaintiff's representations to the Court, the State is not a party to the contract between Plaintiff and Healthfirst, and the State does not dictate whether Healthfirst maintains a relationship with Plaintiff. *See* Healthfirst Opp. at 4, 5; Pike Decl. ¶¶ 6, 7. Healthfirst also points out that Plaintiff has filed four prior lawsuits raising financial disputes with Healthfirst in state court. *See* Healthfirst Opp. at 6–7.

The State also filed a brief in opposition to Plaintiff's motion for a preliminary injunction [ECF No. 30 ("State Opp.")]. The State maintains that it is not a party to Plaintiff's contract with Healthfirst and lacks authority to require Healthfirst to reverse its decision not to renew the contract

4

with Plaintiff. State Opp. at 1. The State further argues that Plaintiff has not identified any injury traceable to the State, his claims are barred by the Eleventh Amendment, and he has no likelihood of success on the merits of any claim against the State. *See id.* at 7–8.

On January 8, 2025, the Court held a hearing on Plaintiff's motion for preliminary relief [ECF No. 51 ("Tr.")]. All parties appeared. At the hearing, Plaintiff submitted unauthorized reply briefing, with exhibits, in further support of his motion [ECF Nos. 48, 49, 50]. The Court accepted the unauthorized reply and gave Plaintiff ample opportunity to present his case on the record at the hearing. *See* Tr. at 7:3–4. After the hearing, the Court issued an Order vacating the Temporary Restraining Order and stating that it would separately issue a ruling on Plaintiff's motion for a preliminary injunction [ECF No. 47]. Below are the Court's findings of fact and conclusions of law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure

## II. FINDINGS OF FACT

Based on the parties' submissions and representations at the hearing on January 8, 2025, the Court makes the following findings of fact.

Healthfirst, Inc. is the parent company of Healthfirst PHSP, which is a health insurance company that acts as a managed care organization ("MCO"), pursuant to contracts with the State of New York, that administers government-sponsored health benefits, including Medicaid. Pike Decl. ¶¶ 3, 4. Healthfirst enters into contracts with providers who furnish healthcare services to patients covered by Medicaid. *See id.* ¶¶ 4–6. The terms of Healthfirst's contracts with providers "are affected by state rules and policies," but "the state is not a party" to such contracts. Pike Decl. ¶ 6. Rather, they "are private contracts between Healthfirst and the . . . provider." *Id.*

Plaintiff executed a contract with Healthfirst with an effective date of January 1, 2017. *See* 2017 Contract at 1, 12. That contract plainly states that it is an agreement "between and among" only Healthfirst entities and "LOVINA MEDICALPC." 2017 Contract at 1; *see id.* at 12. Lovina

5

Medical P.C. is Plaintiff's "professional medical corporation." Pike Decl. ¶ 7; *see id.* ¶ 8 (Umeze signed the contract on behalf of Lovina Medical P.C.); 2017 Contract at 12.

Section 8.1 of the 2017 Contract provides that the contract "shall be effective until the renewal date which shall be the [sic] January 1st of every year and shall continue in effect from year to year unless terminated earlier pursuant to this Section 8." 2017 Contract § 8.1. Section 8.1 further provides that, after the contract "has been in effect for at least twelve months, either party may exercise a right of *non-renewal* at the expiration date of this Agreement upon no less than sixty (60) days' notice to the other party." *Id.* (emphasis added). There is a separate section devoted to "Termination" with and without cause. *Id.* § 8.2.

On October 1, 2024, Healthfirst sent Plaintiff a notice of non-renewal [ECF No. 35-3 ("Non-Renewal")]. The Non-Renewal advises Plaintiff "that Healthfirst is hereby exercising the right not to renew" the 2017 Contract "effective January 1, 2025." Non-Renewal; *see* First Mot., Ex. 2. Thereafter, Healthfirst sent a letter, dated November 6, 2024, advising patients that Plaintiff would "no longer" be in the Healthfirst network "effective 01/01/2025" [ECF No. 25 at 6].

Kara McLaughlin-Mitchell is a Healthfirst employee who is involved in "contracting" with and removal of "physicians in Healthfirst's network of providers." McLaughlin-Mitchell Decl. ¶ 2. Her "team recommended Dr. Umeze for non-renewal. *Id.* ¶ 5. She cites a number of reasons for the decision, including, among other reasons, "undue administrative burdens that Dr. Umeze has imposed on [her] team, the small and decreasing activity of his practice, and concerns about his accessibility to Healthfirst members." *Id.* ¶ 6.

Plaintiff submits evidence that Healthfirst removed him from its provider network on January 1, 2025, in violation of the TRO the Court had issued on December 27, 2024 [ECF No. 50 at 4 ("Guy Decl.")]. Specifically, Plaintiff submits a sworn statement by Anthony Guy that he called Healthfirst on January 2, 2025 "with the intent to enroll as a HealthFirst member under the

primary care of Dr. Ben Umeze, M.D." but was "informed . . . that Dr. Ben Umeze's name was not listed in the HealthFirst physician provider panel." Guy Decl. ¶¶ 2, 4. On the record at the January 8, 2025 hearing, however, counsel for Healthfirst represented that "Healthfirst ha[d] complied with the TRO" and "fully intend[ed] to comply." Tr. at 20:13–14, 21:12. Counsel stated that, "in the days following [the TRO] being posted on the docket," Healthfirst had "reversed" the "internal" process of assigning Plaintiff's patients to "new primary care physicians to take effect January 1." Tr. at 24:4–5, 20:21–25. He was "not aware of any issues with a member calling and being told they can't see Dr. Umeze." Tr. at 21:4–6.

### III. CONCLUSIONS OF LAW

A preliminary injunction may be either prohibitory or mandatory. *N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018). "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *Id.* To obtain a preliminary injunction, a plaintiff must show (1) that he is likely to suffer irreparable harm absent a preliminary injunction; (2) "either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party"; and (3) that a preliminary injunction is in the public interest. *Id.* at 37. "Because mandatory injunctions disrupt the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012)).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). A district court is not, however, required to "come up with novel claims on behalf of *pro se* litigants," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d

Cir. 2017), or ignore evidence that contradicts *pro se* submissions. Indeed, the Second Circuit has made clear that *pro se* status does not "excuse frivolous or vexatious filings" or "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (internal quotation marks and citations omitted).

In the Amended Complaint, Plaintiff purports to assert claims for breach of contract against all Defendants. *See* AC ¶ 23. The operative agreement is the 2017 Contract between Plaintiff, through his medical practice, and Healthfirst. Liberally construing his pleading, Plaintiff alleges that (1) Healthfirst breached the 2017 Contract by its "failure to compensate Plaintiff for services rendered for more than ten years," (2) Healthfirst also breached the 2017 Contract by its "refusal to renew Plaintiff's agreement," and (3) the State breached the contract by "failing to ensure that Health First paid Plaintiff for services rendered." AC ¶¶ 23, 26.

Plaintiff cannot obtain a preliminary injunction based on his claim that Healthfirst breached the 2017 Contract by failing to pay him, "for more than ten years," AC ¶ 26, because Plaintiff cannot show, with respect to this breach of contract claim, that he is likely to suffer irreparable harm absent a preliminary injunction, *see N. Am. Soccer League*, 883 F.3d at 37. The Second Circuit has made clear that an "irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (brackets omitted) (quoting *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 78 (2d Cir. 1990)). If Plaintiff ultimately prevails on his claim that Healthfirst owes him money, he can be compensated with monetary damages.

Plaintiff also cannot obtain a preliminary injunction based on his claim that Healthfirst breached the 2017 Contract by refusing to renew it because Plaintiff has shown no likelihood of success on the merits. *See N. Am. Soccer League*, 883 F.3d at 37. The 2017 Contract plainly states

that, once the contract "has been in effect for at least twelve months, either party may exercise a right of non-renewal" at the yearly January 1 expiration date "upon no less than sixty (60) days' notice to the other party." 2017 Contract § 8.1. Plaintiff admits that the 2017 Contract was in effect for more than twelve months, *see* Tr. at 14:23–24, and there is no dispute that Healthfirst gave Plaintiff more than sixty days' notice of its decision, *see* Non-Renewal. As such, far from breaching the 2017 Contract, Healthfirst properly exercised the right of non-renewal that the 2017 Contract expressly provides.

Plaintiff contends that the right of non-renewal provided in the 2017 Contract "presupposes that everybody meets their obligation[s]" under that agreement. Tr. at 9:21. However, nothing in the text of the 2017 Contract suggests that the right of non-renewal is conditional on the parties' fulfillment of all obligations under the agreement. Rather, the right of non-renewal is expressly conditioned only on whether the agreement "has been in effect for at least twelve months" and whether the non-renewing party provides adequate notice of its decision. 2017 Contract § 8.1; *cf. Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 111 (2d Cir. 2019) (the "mention of one impliedly excludes others").

Plaintiff also asserts claims, pursuant to 42 U.S.C. § 1983, for a purported violation of his Fourteenth Amendment right not to be deprived of property without due process of law and for violation of the Equal Protection Clause of the Fourteenth Amendment. *See* AC ¶¶ 20, 21, 24, 25. The Court offered Plaintiff ample opportunity on the record at the hearing to explain his entitlement to a preliminary injunction based on these claims. *See* Tr. at 26–31. Plaintiff made clear that his purported constitutional claims are wholly duplicative of his claim that Healthfirst has failed to pay him money he is allegedly owed. *See id.*; *id.* at 30:23–24 (Plaintiff, explaining his equal protection claim, stating "they pay other physicians. They haven't paid me."). Similarly, Plaintiff asserts a claim he styles "Failure to Increase Capitation Rates in Violation of Medicaid

9

Policies." AC ¶¶ 27, 28. Plaintiff offers no authority or evidence for his contention that Healthfirst should have paid him at a higher rate. In any event, all of these claims, to the extent they are cognizable, concern money. As such, "a preliminary injunction should not issue" based on any of these claims. *Register.com, Inc*, 356 F.3d at 427.

Furthermore, Plaintiff clearly cannot obtain relief based on his claim that the State breached the 2017 Contract by failing to ensure that Healthfirst paid Plaintiff. The State is not a party to the 2017 Contract. *See* Pike Decl. ¶ 6; 2017 Contract at 1, 12. Although Plaintiff is adamant that the State has a role in his agreement with Healthfirst, all evidence in the record at this stage contradicts Plaintiff's contention. To be sure, Healthfirst may have its own contracts with the State, and the terms of Healthfirst contracts with healthcare providers may be informed by State regulations and requirements. *See* Pike Decl. ¶¶ 3–6. None of this implies that the State is a party to the contract between Plaintiff and Healthfirst, or that the State can be held liable in a breach of contract action for Healthfirst's alleged failure to pay Plaintiff. Moreover, as explained above, any failure to pay Plaintiff is compensable with money damages and, thus, cannot provide a basis for extraordinary relief. *See Register.com, Inc*, 356 F.3d at 427.

There are no allegations or evidence whatsoever to support issuing a preliminary injunction against the individual defendants. Finally, in light of Plaintiff's *pro se* status, the Court liberally construes Plaintiff's argument that Healthfirst violated the TRO as a request for sanctions. The Court, however, exercises its discretion to deny that request. *See Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020) (explaining that a district court has discretion to deny sanctions even where sanctionable conduct may have occurred). While Healthfirst might have temporarily removed Plaintiff from its network prematurely, while the Court's TRO was in effect, there is no evidence of the bad faith required for sanctions. *See Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78–79 (2d Cir. 2000). Rather, the Court accepts the representation of counsel for Healthfirst

that Healthfirst fully intended and attempted to comply with the TRO and was not aware of any issues with its compliance. *See* Tr. at 21:4–6.

## IV. CONCLUSION

For all of the reasons set forth above, Plaintiff's request for a preliminary injunction [ECF No. 25] is DENIED.

The Clerk of Court respectfully is requested to terminate the motion at docket entry 25.

**SO ORDERED.**

Date: **January 24, 2025**
      **New York, NY**

                                                      */s/ Mary Kay Vyskocil*
                                                   **MARY KAY VYSKOCIL**
                                                   **United States District Judge**