UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BEN UMEZE, MD,

                Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF HEALTH, DR. JAMES V. MACDONALD, COMMISSIONER OF NEW YORK STATE DEPARTMENT OF HEALTH, AMIR BASSIRI, NEW YORK STATE MEDICAID DIRECTOR, THE NEW YORK STATE OFFICE OF MEDICAID MANAGEMENT, THE STATE OF NEW YORK, HEALTHFIRST PHSP INC., HEALTHFIRST, and PAT WANG, *CEO Healthfirst*,

                Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/25/2025

1:24-cv-7425 (MKV)

OPINION & ORDER
GRANTING
MOTIONS TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Dr. Ben Umeze, proceeding *pro se*, alleges that Defendant Healthfirst, a Medicaid Managed Care Organization with which Plaintiff previously had a contract to provide services to Medicaid recipients, has failed to pay him for services rendered for ten years, refused to increase his "capitation" rates (*i.e.*, upfront payments per patient), and wrongfully ended its contract with him. Plaintiff brings this action against Healthfirst and the New York State Department of Health, among other State entities and officials. He asserts claims for breach of contract, violations of his constitutional rights, and a violation of New York State Medicaid policy. Defendants move to dismiss. For the reasons set forth below, the motions are GRANTED.

## I.     BACKGROUND[1]

### A. The Parties

"Plaintiff, Dr. Ben Umeze, is a licensed medical practitioner operating in the State of New York." AC ¶ 5. He names as defendants: the State of New York; the New York State Department of Health; Dr. James V. Macdonald, Commissioner of the New York State Department of Health; Amir Bassiri, the New York State Medicaid Director; and the New York State Office of Medicaid Management (collectively, the "State"). AC ¶¶ 6–10. He also names as defendants: Healthfirst PHSP, Inc., a "New York State Licensed Medicaid prepaid health services plan"; Healthfirst, "a New York State licensed Medicaid Managed Care Organization"; and Pat Wang, "the CEO of HEALTHFIRST" (collectively, "Healthfirst"). AC ¶¶ 11–13.

### B. Facts

In the Amended Complaint, Plaintiff alleges that he has long provided care to Medicaid patients "under his contract with Health First." AC ¶ 14; *see id.* ¶ 15; 2017 Contract; 2014 Contract. He further alleges that Healthfirst "is regulated and overseen by the New York State Department of Health." AC ¶ 14. Plaintiff alleges that "[s]ince August 1, 2014," he "has not received any payments for the services he [has] rendered" to such patients. AC ¶ 15; *see id.* ¶ 17 (alleging that Healthfirst "fail[ed] to make required payments for ten years"). He further alleges

---

[1] On a motion to dismiss, a court "accept[s] all 'well-pleaded factual allegations' in the complaint as true." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Here, the facts are taken from the complete version of Plaintiff's Amended Complaint, which Plaintiff has never filed on the docket but which he delivered to Defendants and is in the record [ECF No. 57-1 ("AC")]. Because Plaintiff is *pro se*, the Court liberally construes the allegations in the Amended Complaint and considers factual assertions in Plaintiff's other submissions. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (the Court must liberally construe the *pro se* Plaintiff's "pleadings and briefs"); *Phillips v. Reed Grp., Ltd.*, 955 F. Supp. 2d 201, 229 (S.D.N.Y. 2013) ("[T]he mandate to liberally construe *pro se* pleadings makes it appropriate to consider the facts set forth in plaintiff's opposition papers."); *Locicero v. O'Connell*, 419 F. Supp. 2d 521, 525 (S.D.N.Y. 2006). The Court may also consider on a motion to dismiss "documents attached to the complaint as exhibits," "incorporated by reference," or "integral" to a complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). As such, the Court considers Plaintiff's contract with Healthfirst and its letter to Plaintiff notifying him that Healthfirst elected not to renew his contract [ECF Nos. 35-1 ("2017 Contract") , 35-3 ("Non-Renewal")]. Plaintiff refers to these documents and relies on them in the Amended Complaint. *See, e.g.*, AC ¶¶ 14, 19, 23.

that his "capitation rate, since its inception, has not been increased as required by the policies governing Medicaid managed care plans." AC ¶ 18.

Plaintiff alleges that he has initiated "repeated inquiries, letters, and legal actions," but both the State and Healthfirst "have failed to provide any resolution or payment." AC ¶ 16. He further alleges that, in 2024, he "received a non-renewal notice from Health First without any resolution of [the] outstanding payments" he is allegedly owed. AC ¶ 19; *see* Non-Renewal.

In a letter addressed to the Commissioner of the New York State Department of Health, dated October 18, 2023, which Plaintiff attached to the Amended Complaint, he contended that, at some point, "Health First was turning over Dr. Umeze's monthly . . . payment" to an attorney, pursuant to an "erroneously executed . . . debt judgment" involving a medical practice with the same name [ECF No. 57-1, Ex. A ("2023 Letter") at 2]. Plaintiff also contended that Healthfirst was improperly refusing to increase his capitation rates. *See* 2023 Letter at 1, 3. He mentioned that, in an effort to settle prior litigation, an attorney for Healthfirst "delivered a check for one hundred and twenty thousand dollars which was less than 5% of [the] amount [Plaintiff alleges he is] owed" and was therefore "insufficient for acceptance." *Id.* at 7.

C. **Procedural History**

Plaintiff, proceeding *pro se*, initiated this action in October 2024 by filing a complaint against only the State. [ECF No. 1 (the "Original Complaint" or "Cmpl.")]. The factual allegations in the Original Complaint are substantially the same as the allegations in the Amended Complaint, described above. In short, Plaintiff alleged in the Original Complaint that he is a doctor who has long provided care to recipients of Medicaid through a contract with Healthfirst. Cmpl. ¶¶ 5, 11. He further alleged that Healthfirst had failed to make required payments for ten years, had failed, ever, to increase his "capitation rate," as Plaintiff alleges it was required to do, and sent him a

3

notice of non-renewal without resolving these issues. Cmpl. ¶¶ 14–16.

However, Plaintiff did not name Healthfirst in the Original Complaint. Instead, Plaintiff alleged that the State was a proper defendant because, he alleged, "it holds the responsibility for ensuring that Medicaid providers, like the Plaintiff, receive appropriate payments for services rendered . . . ." Cmpl. ¶ 7. In the Original Complaint, Plaintiff asserted: a claim for breach of contract; a claim, pursuant to 42 U.S.C. § 1983, for violation of his Fourteenth Amendment right not to be deprived of property without due process of law; a Section 1983 claim based on the Equal Protection Clause; and a claim styled, "Failure to Increase Capitation Rates in Violation of Medicaid Policies." Cmpl. ¶¶ 17–25.

Plaintiff thereafter filed his first motion for emergency relief [ECF No. 14 ("First Mot.")]. He sought an order directing "**HealthFirst, Inc.** to stay the termination" of Plaintiff's contract, among other relief from Healthfirst, and directing the State "to require HealthFirst to halt implementation of the termination." First Mot. at 2 (emphasis in original).

After holding a conference with Plaintiff and the State, the Court issued an order denying Plaintiff's first motion for emergency relief [ECF No. 21 ("Order Denying First Mot.")]. The Court explained that Plaintiff principally sought relief from Healthfirst, which he had not named as a defendant, and the Court "[could] not issue an order against a nonparty." Order Denying First Mot. at 3 (quoting *United States v. Paccione*, 964 F.2d 1269, 1275 (2d Cir. 1992)). The Court further explained that, although Plaintiff contended that the State was a party to his contract with Healthfirst and had the authority to direct Healthfirst to continue contracting with him, evidence in the record contradicted Plaintiff's contentions. *See id.* at 4. Indeed, the Court stressed, "Plaintiff has not shown that the New York State Department of Health or the officials he has named as defendants caused the imminent termination of his contract with Health First or are capable of

4

providing redress." *Id.* The Court granted Plaintiff leave to amend his complaint and file a renewed motion for emergency relief. *Id*. at 5.

Plaintiff filed on the docket a submission captioned as an amended complaint, which named the Healthfirst defendants as defendants but omitted the substance of his allegations [ECF No. 20]. He served a complete version of the Amended Complaint on Healthfirst, however, which filed the document on the docket [ECF Nos. 34-1, 57-1 ("AC")].

The Amended Complaint, which is Plaintiff's operative pleading, purports to assert four claims. First, Plaintiff asserts a claim for "Violation of Plaintiff's Due Process Rights under the Fourteenth Amendment (42 U.S.C. § 1983)," alleging that "Defendants, acting under color of state law, have deprived Plaintiff of property rights, specifically the payments owed for services rendered, without due process of law." AC ¶¶ 20, 21 ("Count I"). Second, Plaintiff asserts a claim for breach of contract based on the "fail[ure] to ensure that Health First paid Plaintiff for services rendered." AC ¶¶ 22, 23 ("Count II"). Third, Plaintiff asserts a claim for "Failure to Provide Equal Protection under the Fourteenth Amendment (42 U.S.C. § 1983)," alleging that "Defendants have treated Plaintiff unequally compared to other Medicaid providers." AC ¶¶ 24, 25 ("Count III"). Plaintiff further alleges that "[t]here is no rational basis for Health First's refusal to renew Plaintiff's agreement, nor their failure to compensate Plaintiff for services rendered." AC ¶ 26. Fourth, Plaintiff purports to assert a claim for "Failure to Increase Capitation Rates in Violation of Medicaid Policies," alleging that "Defendants failed to enforce New York State Medicaid policies requiring an increase in capitation rates." AC ¶¶ 27, 28 ("Count IV").

Plaintiff specifically alleges that the Court has federal question jurisdiction based on his federal claims and "supplemental jurisdiction over [his] state law claims." AC ¶¶ 2, 3.

Plaintiff filed a renewed motion for emergency relief based on his Amended Complaint [ECF No. 25 ("Renewed Mot.")]. He requested substantially the same relief as he had requested in his first motion for emergency relief. *See* Renewed Mot. at 2.

The Court issued a Temporary Restraining Order ("TRO") only "to preserve [the] existing situation in *statu quo* until the court ha[d] an opportunity to pass upon the merits of the demand for a preliminary injunction" [ECF No. 27 ("TRO") at 1 (quoting *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009))]. Specifically, the Court directed Healthfirst to "temporarily stay the termination of Plaintiff's participation in its provider network." TRO at 2. However, the Court did not direct the State to take any action.

After briefing and a hearing, the Court vacated the TRO and, shortly thereafter, denied Plaintiff's renewed motion for emergency relief in its entirety [ECF Nos. 30, 33, 34, 35, 36, 47, 51, 59 ("PI Op.")]. In that posture, in its findings of fact and conclusions of law pursuant to Rules 52(a) and 65 of the Federal Rules of Civil Procedure, the Court explained that Plaintiff could not obtain a preliminary injunction based on his claim that Healthfirst had breached its contract with him by failing to pay him money it allegedly owes him. PI Op. at 8 ("Where money damages are adequate compensation a preliminary injunction should not issue." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)). The Court explained that "[i]f Plaintiff ultimately prevails on his claim that Healthfirst owes him money, he can be compensated with monetary damages." *Id.* The Court also concluded that Plaintiff had "shown no likelihood of success on the merits" of a breach of contract claim based on the decision by Healthfirst not to renew Plaintiff's contract, since the contract expressly provides for a "right of non-renewal." *Id.* at 9 (quoting 2017 Contract § 8.1). The Court further concluded that Plaintiff "clearly" could not prevail on a breach of contract claim against the State based on its alleged failure to ensure that Healthfirst paid Plaintiff, since

6

the State was not a party to any contract between Plaintiff and Healthfirst. *Id.* at 10. The Court explained that, notwithstanding Plaintiff's allegations that the State has regulatory authority over Healthfirst, he offered no authority that "the State can be held liable in a breach of contract action" for Healthfirst's alleged failure to pay Plaintiff. *Id.* With respect to his other claims, the Court explained that "Plaintiff [had] made clear" on the record at the hearing on his renewed motion for emergency relief "that his purported constitutional claims are wholly duplicative of his claim that Healthfirst has failed to pay him money he is allegedly owed." *Id.* at 9. Finally, with respect to the claim styled Failure to Increase Capitation Rates in Violation of Medicaid Policies, the Court concluded that Plaintiff had offered "no authority" that such a claim is even cognizable and, if it is, it "concerns money." *Id.* at 10.

Meanwhile, the State and Healthfirst each moved to dismiss the Amended Complaint [ECF Nos. 54, 55 ("State Mem."), 56, 57, 58 ("Healthfirst Mem.")]. The State argues that Plaintiff's claims against it should be dismissed pursuant to Rule 12(b)(1), for lack of subject matter jurisdiction, because Plaintiff fails to allege any injury that is fairly traceable to any of the State defendants, or that they can provide redress, and because his claims are barred by the Eleventh Amendment. State Mem. at 2, 5–9. The State further argues that Plaintiff's claims should be dismissed pursuant to Rule 12(b)(6), for failure to state a claim, for various reasons. *Id.* at 2, 10–13. Healthfirst argues that Plaintiff's claims should be dismissed because Plaintiff fails to plausibly allege that "Healthfirst was functioning as a state actor," as required for his Section 1983 claims, and the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. Healthfirst Mem. at 5–6, 11.

Plaintiff filed an opposition to each motion [ECF Nos. 60 ("Opp. to Healthfirst"), 61 ("Opp. to State")]. The State and Healthfirst filed reply briefs in further support of their motions [ECF

7

Nos. 62, 63]. Plaintiff thereafter filed an unauthorized surreply making arguments concerning Healthfirst, and, without authorization, Healthfirst responded [ECF Nos. 64, 65].

## II. LEGAL STANDARDS

### A. Pro Se Submissions

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). However, a district court is not tasked with "scouring obscure bodies of law in order to come up with novel claims on behalf of *pro se* litigants." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 158 (2d Cir. 2017). Moreover, *pro se* status does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (internal quotation marks and citations omitted).

### B. Dismissal for Lack of Subject Matter Jurisdiction

"A district court properly dismisses an action under [Federal Rule of Civil Procedure] 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it.'" *Cortlandt St. Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 416–417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In particular, as pertinent here, a court lacks subject matter jurisdiction if "the plaintiff lacks constitutional standing to bring the action." *Id.* at 417. The Constitution limits federal court jurisdiction to "actual cases or controversies" between the parties before the court, and the standing requirement exists "to ensure that federal courts do not exceed" that limitation. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation marks and citation omitted); *see Murthy v. Missouri*, 603 U.S. 43, 56–57 (2024). Thus, as the "party invoking federal jurisdiction," the

8

plaintiff "bears the burden" of alleging the elements of standing. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Specifically, a plaintiff must allege an "injury" that is "fairly traceable to the defendant's allegedly unlawful conduct" and is "likely to be redressed by the requested relief." *California v. Texas*, 593 U.S. 659, 669 (2021) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)); *see Murthy*, 603 U.S. at 57.

In addition, a "defense of sovereign immunity implicates the court's subject matter jurisdiction" and, therefore, is a basis for dismissal under Rule 12(b)(1). *Kelsey v. Kessel*, 2025 WL 1324213, at *1 (2d Cir. May 7, 2025); *see Alden v. Maine*, 527 U.S. 706, 730 (1999) (holding that "the constitutional principle of sovereign immunity does pose a bar to federal jurisdiction over suits against nonconsenting States"). Indeed, the Second Circuit has held that "[t]he doctrine of sovereign immunity is jurisdictional in nature," and "the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113.

Also pertinent to this case, as the Second Circuit has explained, "[f]ederal district courts have supplemental jurisdiction over state-law claims 'that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 121–122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)). However, the exercise of such supplemental jurisdiction is a matter of discretion by the district court, "not of plaintiff's right." *Id.* at 122 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). By statute, "a district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Id.* (quoting 28 U.S.C. § 1367(c)(3)).

9

### C. Dismissal for Failure To State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must raise "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must accept all 'well-pleaded factual allegations' in the complaint as true" but a court need not accept a "legal conclusion." *Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678, 679). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### III.    DISCUSSION

As Plaintiff himself explains, "[t]he core issues in this litigation" are "Healthfirst's [alleged] failure to compensate Plaintiff for services rendered since 2014, its [alleged] refusal to update Plaintiff's capitation rates per contractual and [New York State] Medicaid policy requirements," and the decision by Healthfirst not to renew its contract with Plaintiff. Opp. to Healthfirst at 1. In other words, Plaintiff seeks to press state law claims against a company. Plaintiff's allegation that Healthfirst "is regulated and overseen by the New York State Department of Health," AC ¶ 14, does not transform Plaintiff's dispute with Healthfirst into an actual case or controversy with the State, nor does it transform Healthfirst into a state actor. *See Spokeo*, 578 U.S. at 337–338; *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974) ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.").

10

Thus, as explained below, liberally construing Plaintiff's submissions to raise the strongest arguments they suggest, Plaintiff fails to establish standing to assert claims against the State. He also fails to plausibly allege a federal claim against Healthfirst, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against Healthfirst.

**A. Plaintiff Fails To Establish Standing to Sue the State.**

As noted above, the State argues that the Amended Complaint should be dismissed as to the State defendants, for lack of standing, because Plaintiff has not shown that they "are the cause of any alleged injuries" or "can provide redress." State Mem. at 6 (citing *Cortlandt St. Recovery Corp.*, 790 F.3d at 416–417). The Court agrees. Indeed, this jurisdictional defect has been evident from the outset of this case. *See* Order Denying First Mot. at 4 (explaining that "Plaintiff fail[ed] to establish standing" to request and order directing the State to require Healthfirst to stay termination of his contract because "Plaintiff ha[d] not shown that the New York State Department of Health or the officials he has named as defendants caused the imminent termination of his contract with Health First or are capable of providing redress.").

Plaintiff alleges that he has suffered injuries in the form of "financial losses" resulting from "*HealthFirst's* failure to make required payments for ten years," the refusal of *Healthfirst* to increase his capitation rates, and the decision of *Healthfirst* to end its relationship with Plaintiff without payment of the amounts it allegedly owes. AC ¶¶ 17 (emphasis added), 18, 19, 26; *see* 2023 Letter at 2–3 ("*Health First* reneged on [its] obligation to increase Dr Umeze's capitation rate" and "*Health First* . . . stopped making any payments") (emphases added); Pl. Opp. to Healthfirst at 1 (the "core issues" are "*Healthfirst's* [alleged] failure to compensate Plaintiff," "its refusal to update Plaintiff's capitation rates per contractual and [New York State] Medicaid policy requirements," and "its . . . non-renewal") (emphasis added).

11

The sole allegation in the Amended Complaint that even arguably purports to connect Plaintiff's alleged injuries to the State's conduct is a passing assertion that "Health First . . . is regulated and overseen by the New York State Department of Health." AC ¶ 14; *see also id.* ¶¶ 6, 7, 9, 10 (alleging on "information and belief" that State defendants are "responsible" for oversight and regulation). However, not every injury allegedly caused by a regulated entity is fairly traceable to the State. *See Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41 (1976) ("injury at the hands of a hospital is insufficient by itself to establish a case or controversy" against treasury officials); *see also Murthy*, 603 U.S. at 60–61. Indeed, it is a bedrock principle that an injury is not fairly traceable to a defendant if it is the result of independent action by another party. *See Lujan*, 504 U.S. at 560.

Moreover, the Amended Complaint does not allege any "unlawful conduct" by any of the State defendants and, therefore, cannot allege that any injury is "fairly traceable to the [State] defendant's allegedly unlawful conduct." *California*, 593 U.S. at 669. In the 2023 Letter attached the Amended Complaint, Plaintiff asserts that "HealthFirst has refused to make [the] require capitation increase even after NYS DOH mandated physician office visit FFS 2003 increase from $19.50 to $37.50." 2023 Letter at 1. The allegation that Healthfirst violated an alleged State policy is not an allegation of unlawful conduct by the State.

In his opposition papers, Plaintiff asserts, without any explanation or citation to authority, that "the State Defendants have a duty to ensure proper Medicaid reimbursement and enforcement of provider agreements, which they have abdicated." Opp. to State at 1; *see id.* at 3 ("The State Defendants have failed in their duty to oversee MCO compliance with Medicaid reimbursement mandates."). This assertion about the State's supposed duty is merely a legal conclusion that the Court "is not bound to accept." *Lynch*, 952 F.3d at 75 (quoting *Iqbal*, 556 U.S. at 678). As the

12

Court alluded to earlier, in connection with his requests for emergency relief, Plaintiff took the position that the State was a party to his contract with Healthfirst. *See* Renewed Mot. at 3 ("The Plan-Provider Agreement is a three-party contract binding the State of New York, HealthFirst, and Plaintiff."); *see also* PI Op. at 5. However, Plaintiff's contract with Healthfirst plainly states that it is an agreement "between and among" only Healthfirst entities and Plaintiff's medical practice. 2017 Contract at 1; *see id.* at 12.[2] Plaintiff simply offers no facts from which the Court reasonably can infer that the State had any role in Plaintiff's relationship with Healthfirst such that financial losses allegedly caused by Healthfirst are injuries fairly traceable to any of the State defendants. *See Simon*, 426 U.S. at 41; *Lujan*, 504 U.S. at 560.

Liberally construing the Amended Complaint, Plaintiff alleges that the State failed to enforce its own policy requiring an increase in capitation rates after Plaintiff wrote a letter to the Commissioner of the New York State Department of Health informing him that Healthfirst had failed to comply. *See* AC ¶¶ 7, 16; 2023 Letter at 1. However, assuming *arguendo* that the State's alleged failure to act on Plaintiff's letter is an alleged injury, Plaintiff has a redressability problem. Specifically, the Supreme Court has explained that "challenges to the Executive Branch's exercise of enforcement discretion" traditionally are not "redressable by a federal court." *United States v. Texas*, 599 U.S. 670, 677 (2023).

Accordingly, because Plaintiff fails to establish standing to sue the State defendants, the Amended Complaint is dismissed as to the State defendants without prejudice. *See Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 445 (2d Cir. 2022) (dismissal for lack of standing must be without

---

[2] In his opposition papers, Plaintiff cites language defining the term "Plan Contract(s)" as "contracts between Healthfirst and a federal, state or local agency under which Healthfirst provides services to Enrollees." Opp. to Healthfirst at 5; 2017 Contract § 1.6. Plaintiff's contract with Healthfirst references the existence of separate contracts between Healthfirst and government actors. It does not imply that the State is a party to the contract between Plaintiff and Healthfirst.

prejudice). As such, the Court need not consider the State's sovereign immunity defense and may not consider the merits of Plaintiff's claims against the State. *See Salazar v. Nat'l Basketball Ass'n*, 118 F.4th 533, 540 (2d Cir. 2024) (a federal court "cannot consider a lawsuit's merits . . . unless [the] three constitutional standing requirements are met"); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety").

## B. Plaintiff Fails To State a Federal Claim Against Healthfirst.

Plaintiff purports to assert two claims arising under federal law against Healthfirst: a claim, pursuant to 42 U.S.C. § 1983, for violation of his Fourteenth Amendment right not to be deprived of property without due process (Count I), and a claim, pursuant to 42 U.S.C. § 1983, for violation of his Fourteenth Amendment right to equal protection of law (Count III). *See* AC ¶¶ 20–21, 24–25. "To state a claim for relief in an action brought under [Section] 1983," a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, *and that the alleged deprivation was committed under color of state law*." *Wheatley v. New York State United Teachers*, 80 F.4th 386, 390 (2d Cir. 2023) (emphasis added) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)). Plaintiff fails to state a claim against Healthfirst under Section 1983 because Plaintiff fails to plausibly allege that Healthfirst acted under color of state law. *See American Mfrs. Mut. Ins. Co.*, 526 U.S. at 50–51.

As the Supreme Court has explained, "the under-color-of-state-law element of [Section] 1983 excludes from its reach 'merely private conduct, no matter how [allegedly] wrongful.'" *Id.* at 50 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)). As such, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). Moreover, "[w]hen analyzing allegations of state

14

action," a court must analyze "'the specific conduct of which the plaintiff complains.'" *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 51). Indeed, the State must be "*responsible* for the specific conduct of which the plaintiff complains." *Blum*, 457 U.S. at 1004 (emphasis in original).

Pertinent here, "[i]n cases involving extensive state regulation of private activity," the Supreme Court has "consistently held that '[t]he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.'" *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 350 (1974)). Rather, for a deprivation under color of state law, there must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351. "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 52.

In the Amended Complaint itself, Plaintiff merely alleges that "Health First . . . is regulated and overseen by the New York State Department of Health." AC ¶ 14. In his opposition papers, Plaintiff asserts that Healthfirst is a state actor because it "receiv[es] substantial public funding and execute[s] state-mandated healthcare policies." Opp. to Healthfirst at 2. He further asserts that Healthfirst "administer[s] Medicaid benefits through state-controlled contracts." *Id.* at 5; *see id.* at 6 ("the state dictates the terms governing HealthFirst's operations"). In support of his assertion that Healthfirst acts pursuant to "state-controlled contracts," Plaintiff stresses that his contract with Healthfirst incorporates by reference "the contracts between Healthfirst and a federal, state or local agency under which Healthfirst provides services to Enrollees" and provides that the terms of

Healthfirst contracts with providers cannot "conflict" with the terms of Healthfirst contracts with government agencies. Opp. to Healthfirst at 5; *see* 2017 Contract § 1.6.

Accepting Plaintiff's factual assertions as true, he nonetheless fails to allege that Healthfirst was acting under color of state law when it allegedly failed to pay him, increase his capitation rates, and renew his contract. *See Tancredi*, 316 F.3d at 312. Far from alleging that the State was "*responsible* for the specific conduct of which" he "complains," *Blum*, 457 U.S. at 1004, Plaintiff alleges that Healthfirst acted "in *violation* of New York State Medicaid policies," AC ¶ 17 (emphasis added). Plaintiff does not allege that the State initiated, encouraged, or otherwise "put its own weight on the side" of the alleged conduct by Healthfirst. *Tancredi*, 316 F.3d at 313 (quoting *Jackson*, 419 U.S. at 357). Rather, Plaintiff alleges only that the State failed to enforce its own policies, even after Plaintiff wrote a letter to the Commissioner of the Health Department. *See* AC ¶¶ 7, 16; 2023 Letter. However, such alleged "acquiescence of the State" in the allegedly wrongful conduct of Healthfirst "is not state action." *American Mfrs. Mut. Ins. Co.*, 526 U.S. at 52 (holding that "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action.").

As noted above, Plaintiff further alleges that Healthfirst is "regulated and overseen" by the State to such an extent that "the state dictates the terms governing HealthFirst's operations." AC ¶ 14; Opp. to Healthfirst at 6. However, even "extensive and detailed" regulation does not make a private company a state actor. *Jackson*, 419 U.S. at 350; *see San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987). Moreover, "[t]he [g]overnment may subsidize private entities without assuming constitutional responsibility for their actions." *San Francisco Arts & Athletics, Inc.*, 483 U.S. at 544. Plaintiff also stresses that Healthfirst administers "state-mandated healthcare." Opp. to Healthfirst at 2. However, the Supreme Court has rejected

the notion that any entity involved in the administration of Medicaid services is a state actor in all cases. *See Blum*, 457 U.S. at 1011–1012; *see also Karen L. ex rel. Jane L. v. Physicians Health Servs., Inc.*, 202 F.R.D. 94, 104–05 (D. Conn. 2001) (managed care organization was not "a state actor by virtue of its contract with [the Department of Social Security]"); *Tutuianu v. New York Presbyterian Cmty. Health Plan*, No. 09-cv-0788 (JG), 2009 WL 10706268, at *2 (E.D.N.Y. June 18, 2009) ("the fact that [the defendant] may receive federal Medicaid funds and is subject to state regulation does not establish that it is a state actor"). Finally, while Plaintiff asserts that Healthfirst acts pursuant to "state-controlled contracts," Opp. to Healthfirst at 5, the provisions he invokes merely reflect that Healthfirst must comply with its contractual obligations to the State, *see* 2017 Contract § 1.6. A "contract with the government" is not sufficient to "convert [an entity's] conduct into state action." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 492 (2d Cir. 2009).

To be clear, the Court is not suggesting that a plaintiff could never adequately allege that a Medicaid managed care organization, including Healthfirst, is a state actor for purposes of a Section 1983 claim. The Court merely concludes that, here, Plaintiff fails to plausibly allege that the State was responsible for the specific conduct by Healthfirst of which Plaintiff complains in this case. *Blum*, 457 U.S. at 1004. Accordingly, since Plaintiff fails to allege that any deprivation of his rights was "committed under color of state law," the Court dismisses Plaintiff's two Section 1983 claims (Count I and Count III) against Healthfirst. *Wheatley*, 80 F.4th at 390.

## C. The Court Declines To Exercise Supplemental Jurisdiction.

The Court has dismissed all of Plaintiff's federal claims. Plaintiff's two remaining claims against Healthfirst are a state law claim for breach of contract and a purported claim for "fail[ure] to increase capitation rates in accordance with *State* policy." Opp. to Healthfirst at 6 (emphasis altered); *see* AC ¶¶ 22–23, 27–28 ("New York State Medicaid policies requir[ed] an increase in

17

capitation rates"); 2023 Letter at 1. The Court declines to exercise supplemental jurisdiction over these state law claims. *See* 28 U.S.C. § 1367(c)(3).

In determining whether to exercise supplemental jurisdiction, a district court must consider "the traditional 'values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988)). "In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7). This case is at an "early stage," which weighs against the exercise of supplemental jurisdiction. *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 306 (2d Cir. 2003). There is no preemption issue or similar reason to exercise supplemental jurisdiction. *See id.* On the contrary, the Supreme Court has explained that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726. Accordingly, Plaintiff's two remaining state law claims are dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, the two pending motions to dismiss this case [ECF Nos. 54, 56] are GRANTED. The Amended Complaint is dismissed in its entirety without prejudice as to the State for lack of standing. The federal claims against Healthfirst asserted in Counts I and III of the Amended Complaint are dismissed with prejudice. The state law claims against Healthfirst in Counts II and IV are dismissed without prejudice.

The Clerk of the Court respectfully is requested to terminate the motions at docket entries 54 and 56 and to close this case.

**SO ORDERED.**

Date:  September 25, 2025
       New York, NY

_____
**MARY KAY VYSKOCIL**
**United States District Judge**